Peter J. McBREEN et al.,
Plaintiffs-Appellees,

v.

BEECH AIRCRAFT CORPORATION et al., Defendants-Appellants.

No. 76–1411.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1976.

Decided Oct. 19, 1976.

Rehearing Denied Nov. 12, 1976.

Charles J. O'Laughlin, Edmund W. Sinnott, Chicago, Ill., for defendants-appellants.

Randall L. Mitchell, Chicago, Ill., for plaintiffs-appellees.

Before SPRECHER and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

SPRECHER, Circuit Judge.

The sole issue on this appeal is whether the due process clause of the Fourteenth Amendment precludes subjecting the defendants to the *in personam* jurisdiction of the district court.

I

Plaintiffs Peter J. McBreen a citizen of Illinois and Peter J. McBreen & Associates, Inc., an Illinois corporation, brought this diversity suit for libel against Beech Aircraft Corporation, a Delaware corporation, with its principal place of business in Wichita, Kansas; Robert Martin, a citizen of Kansas; Martin, Pringle, Schell & Fair, a law partnership with its principal offices in Wichita, Kansas. This action arose out of certain allegedly defamatory statements made by the defendants about Peter J. McBreen and Peter J. McBreen & Associates.[1]

---

* Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Mr. Martin has admitted having a conversation which forms the primary basis for this action. But, the plaintiffs also allege in their complaint that the other defendants made or conspired to make defamatory statements about the plaintiffs. The court below, however, reached its decision solely on the basis of Mr. Martin's statements. Our disposition of the jurisdictional issue on this appeal also relies solely on Mr. Martin's statements, since the defendants, by uncontested affidavits, have denied the plaintiffs' other allegations. *See Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395 (7th Cir. 1965).

A brief statement of the facts is required for a complete understanding of the jurisdictional issues presented by this appeal.

In February 1974, Beech, represented by Martin and the law partnership with which Martin was associated, filed an antitrust suit against several insurance adjusters, including the corporate plaintiff in this action. Shortly thereafter, Martin received a long-distance call at his office in Wichita, Kansas from a person who identified himself as a reporter for *Business Insurance.* The reporter inquired about the suit recently filed by Martin on behalf of Beech, and Martin responded to the reporter's questions.

Martin did not know from where the call originated, but he believed it came from Massachusetts. During the conversation, there was no discussion of the place of publication or the areas of distribution of *Business Insurance.* In fact, however, the call originated from Chicago, Illinois, which is both the place of publication (and one of the areas of distribution) of *Business Insurance,* and where the plaintiff engages in the insurance adjustment business.

Soon after the conversation between Martin and the reporter, an issue of *Business Insurance* appeared containing an article describing the Beech lawsuit. The "source close to the case" referred to in that article is alleged to be Robert Martin, and plaintiff claims that the article includes some of the allegedly defamatory statements made by Martin in the course of his conversation with the *Business Insurance* reporter.

Martin did not know of the article's publication until after publication, and did not participate or assist in the preparation of the article.

On May 28, 1975, the defendants filed motions in the district court to quash service of summons and dismiss the complaint on the ground that the court lacked personal jurisdiction over the defendants. The court denied the motions, finding jurisdiction proper under Rule 4(e) of the Federal Rules of Civil Procedure and § 17(1)(b) of the Illinois Civil Practice Act. It is from this decision that defendants appeal.

## II

Section 17 of the Illinois Civil Practice Act (the Illinois "long-arm" statute) provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

\* \* \* \* \* \*

(b) The commission of a tortious act within this State.

It is well established that for purposes of the Illinois "long-arm" statute a tort is committed in the place where the injury occurs. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1142 (7th Cir. 1975); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 435–36, 176 N.E.2d 761, 762–63 (1961). It is also clear that the Illinois "long-arm" statute was intended to extend jurisdiction over non-residents to the extent permitted by due process. *Nelson v. Miller,* 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). Therefore, since there appears to be no dispute between the parties that "the injuries suffered by the plaintiffs, if proven, occurred in Illinois," the sole issue to be resolved is whether subjecting the defendants to *in personam* jurisdiction in this case comports with the due process clause of the Fourteenth Amendment.

## III

The Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), held that

Also, in light of our disposition of this appeal, it is unnecessary to decide whether the district court was correct in assuming that, if jurisdiction was properly exercised over Martin, jurisdiction over the other defendants was proper as well.

in order to exercise *in personam* jurisdiction over a non-resident defendant due process must be satisfied in that he must "have certain *minimum contacts* with . . . [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Emphasis supplied, citations omitted.)

Apparently the court below agreed with the parties' assumption that the dispositive test of *minimum contacts* is whether the possible effects of Martin's statements in Illinois were foreseeable. In the court's words:

[S]ince the statements were about Illinois residents and made to a reporter Martin believed was calling from Massachusetts, he should have been aware of the nature and scope of distribution of Business Insurance and, hence, the possible effect of his remarks in Illinois.

However, in our view, the limitations imposed upon the exercise of *in personam* jurisdiction by the due process clause "cannot be determined by application of a rigid formula or rule" such as "foreseeability." *Honeywell, supra* at 1144. Rather,

[t]he issue of minimum contacts turns on the specific facts of each case, and the existence or absence of jurisdiction depends on an assessment of the quality and nature of a defendant's activity.

*Id.* at 1144. Accordingly,

[t]he test . . . is a flexible one which emphasizes the reasonableness of subjecting a defendant to suit; and the proper inquiry is whether a non-resident defendant can be said to have invoked, by act or conduct, the benefits and protection of the laws of the forum (citations omitted).

Applying these principles to the case at bar, we find that the defendant Martin did not have sufficient contacts with Illinois to justify subjecting him to the jurisdiction of the district court. However, because the issue is one which by its nature requires resolution on a case-by-case basis and because this case is similar in some respects to cases where jurisdiction has been upheld, we deem it appropriate to discuss those cases and indicate the reasons why they do not control.

## IV

In *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois Supreme Court upheld jurisdiction over an Ohio corporation which manufactured a valve which was incorporated in Pennsylvania in a water heater and then sold to an Illinois resident who was injured when the heater exploded. The court recognized that "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." 22 Ill.2d at 440, 176 N.E.2d at 765. Applying this test, the court stated:

In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. . . [I]t is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves.

22 Ill.2d at 441–42, 176 N.E.2d at 766. Hence, the court concluded,

it is not unreasonable where a cause of action arises from the alleged defects in his product, to say that the use of such products *in the ordinary course of commerce* is sufficient contact with this State to justify a requirement that he defend here.

22 Ill.2d at 442, 176 N.E.2d at 766 (emphasis supplied).

To the same effect is the recent decision by this court in *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir. 1975). In *Honeywell,* a foreign corporation, knowing that its product infringed a patent held by an Illinois corporation, deliberately

marketed the product and promoted its sale in the United States. Subsequently, sales were in fact made in Illinois. In upholding the exercise of *in personam* jurisdiction over the defendant in Illinois, this court stated:

> We look to the *economic and commercial realities* of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products.

*Id.* at 1144 (emphasis supplied).

Similarly, where newspaper, magazine or book publishers have deliberately circulated their "products" in the stream of interstate commerce and those "products" are alleged to have tortious consequences (*i. e.* injury to reputation) within the forum state, the courts have generally upheld jurisdiction.[2] *See Buckley v. New York Post Corp.,* 373 F.2d 175 (2d Cir. 1967); *Process Church of Final Judgment v. Sanders,* 338 F.Supp. 1396 (N.D.Ill.1972). As Judge Friendly noted in *Buckley*:

> Newspapers, magazines, and broadcasting companies are businesses conducted for profit and often make very large ones. Like other enterprises that inflict damage in the course of performing a service highly useful to the public . . . they must pay the freight; and injured persons should not be relegated to forums so distant as to make collection of their claims difficult or impossible . . . .

373 F.2d at 182.

■ These cases reveal that the question of whether the due process clause permits the exercise of personal jurisdiction over a defendant whose conduct outside the forum has effects within the forum involves something more than the "foreseeability" of those effects. In *Gray, Honeywell* and the defamation cases, the defendant manufacturers or publishers, in the ordinary course of business, deliberately introduced their "products" into the "stream of commerce" in obvious contemplation of their ultimate sale or use in other states. Given the nature and quality of their activity outside the forum, it was not unreasonable to conclude that the defendants, though non-residents, had purposefully invoked the benefits and protection of the laws of those states along the "stream of commerce" where their "products" were *in fact* marketed or used.

■ The nature and quality of defendant Martin's activity in the case at bar, however, is of a markedly different order. While situated in his law office in Wichita, Kansas, he answered a telephone call, found a reporter on the other end of the line, and responded to the reporter's inquiries about a case Martin had recently filed. This telephone exchange, initiated by the reporter, constitutes the only contact between the defendant and the forum. Unlike the defendants in *Gray, Honeywell* and *Buckley,* Martin was not, in the ordinary course of his affairs, deliberately placing his statements into the "stream of commerce" so that we would be justified in presuming that he had purposefully availed himself of the benefits and protections afforded by Illinois law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Hence, his contacts with the State of Illinois were insufficient to justify the exercise of *in personam* jurisdiction by the district court.

*Novel v. Garrison,* 294 F.Supp. 825 (N.D. Ill.1969), relied on by plaintiffs, does not suggest a contrary result. In *Garrison,* the conduct of the non-resident defendant was inextricably intertwined with that of the Illinois publisher, and his contacts with the Illinois forum were extensive:

2. It should be noted, however, that there is support for the view that in defamation cases potentially involving First Amendment considerations, the requisite minimum contacts should be greater than in the normal case before jurisdiction is found to exist. *See New York Times Co. v. Connor,* 365 F.2d 567 (5th Cir. 1966). *Cf.* Restatement Second, *Conflict of Laws* § 36 (1971). For a discussion of this problem, *see* R. Crampton, D. Currie & H. Kay, *Conflict of Laws,* 565–69 (2d ed. 1975).

[A]t the time of publication Garrison knew that the interview would be printed and published by HMH in Playboy Magazine in Chicago, Illinois, and be distributed from Chicago throughout the state of Illinois as well as many other states. Galley proofs of the interview had been sent to Garrison from Chicago and upon receipt Garrison made notations and changes and returned the proofs to Playboy's office in Chicago. Defendant Garrison participated in numerous and lengthy telephone calls with the Playboy office in Chicago dealing with the subject matter, form and content of the interview. Various documents and memoranda were also exchanged by mail.

*Id.* at 827 (footnotes omitted). In contrast, the only contact Martin had with Illinois was the single telephone exchange initiated by a representative of an Illinois based magazine.

### V

Nevertheless, plaintiffs contend that there is authority supporting jurisdiction on the basis of contacts with the forum state which are no more extensive than those found in the present case—namely, a single telephone exchange. Again, despite superficial similarities, the cases relied upon are readily distinguishable from the case at bar.

In *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973), it was alleged that in response to a telephone inquiry from plaintiff's agent the non-resident defendants made fraudulent misrepresentations regarding certain bonds. While the court did say that it did not "make any difference that only one telephone call was involved," it went on to state:

[H]ere, as in *Gray,* defendants do not claim that this telephone call . . . is an "isolated instance." In the absence of any allegation otherwise, we do not think it an unfair inference to assume that defendants, as paying agents/trustees on bonds which float freely through the securities markets, have been called upon before by brokers or individuals in Illinois to verify the validity of such bonds.

358 F.Supp. at 1009.

Thus, in *Southeast Guaranty,* as in *Gray* and *Honeywell,* the nature of the defendants' out-of-state activity—*i. e.,* dealing in securities which have been placed in the "stream of commerce"—made it reasonable to presume that, in the absence of any allegation to the contrary, the defendants had invoked the benefits and protection of Illinois law. However, in the case at hand, there is nothing in the record to suggest that Martin was in the habit of transmitting information about his pending lawsuits into the stream of commerce. There is, therefore, no reason to presume that Martin's responses to the reporter's telephone inquiry constituted anything other than an "isolated instance."

Finally, plaintiffs' reliance on *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist. 1973), is also misplaced. In *Cook,* an Illinois employment agency brought suit against a non-resident corporation to collect a fee for placing an applicant with the defendant corporation. In upholding the exercise of jurisdiction based upon a single telephone transaction between the parties, the court emphasized that it "was defendant . . . who initiated the business transaction in question by telephoning plaintiff . . .". 14 Ill.App.3d at 970, 304 N.E.2d at 31 (emphasis supplied). That the key to the court's decision in *Cook* was the fact that the single telephone transaction, upon which plaintiff based his claim was initiated by the defendant is established by a recent opinion from the same court. *See Artoe v. Mann,* 36 Ill.App.3d 204, 343 N.E.2d 647 (1st Dist. 1976). In contrast, the sole contact between defendant Martin and the forum in this case consisted of remarks made during a telephone call which was neither solicited nor initiated by the defendant.

Hence, although there has undoubtedly been a trend in Illinois and elsewhere toward the extension of jurisdiction in cases where the actions of persons outside the

state are alleged to have had effects within the state, there remain due process outer limits on the reach of a state's long-arm jurisdiction. *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). For the reasons stated above, we believe the exercise of jurisdiction over the defendants in this case would exceed those limits.

Accordingly, we reverse the judgment. Reversed.