Kenneth B. DION

v.

Ari KIEV, M.D. and Leo Goldner.

Civ. A. No. 83–0432.

United States District Court,
E.D. Pennsylvania.

July 5, 1983.

---

Martin Techner, Philadelphia, Pa., for plaintiff.

Edward German, Philadelphia, Pa., for Ari Kiev, M.D.

Edwin Scherlis, Philadelphia, Pa., for Leo Goldner.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This is a defamation action brought by plaintiff Kenneth B. Dion against defendants Ari Kiev and Leo Goldner. On Sunday, October 31, 1982, an article entitled "Out of Shape, Club Nautilus Faces Financial Collapse" appeared in *The Philadelphia Inquirer.* The article alleged that plaintiff mismanaged the various clubs known as "Club Nautilus." Presently before the Court is the motion of defendant Goldner to dismiss for failure to state a cause of action and for lack of personal jurisdiction. For the reasons which follow, defendant's motion will be denied.

## I. FACTS

Plaintiff organized a group of fitness clubs trading under the name "Club Nautilus." Defendants Goldner and Kiev were investors in a Maryland corporation known as "Club Nautilus Sports Training and Medical Fitness Centers of White Marsh, Inc.," located in a shopping mall in White Marsh, Maryland ("White Marsh Club"). Goldner owned 16.67% of the stock and Kiev owned 6.67% of the stock. On March 12, 1981, the White Marsh Club entered into a management contract with Total Management Corporation ("Total"). Total was a Delaware corporation but maintained its principal offices in Pennsylvania. Under the contract, plaintiff was assigned management responsibilities for the White Marsh Club. Ultimately, the club failed and closed its doors.

In October, 1982, Jan Shaffer, a reporter for *The Philadelphia Inquirer* telephoned Goldner in New York. Goldner, a New

York resident and citizen, answered questions posed by Ms. Shaffer concerning her investigation into the activities of Club Nautilus. During the conversation Ms. Shaffer identified herself as a reporter for *The Philadelphia Inquirer.*

On Sunday, October 31, 1982, the article entitled "Out of Shape, Club Nautilus Faces Financial Collapse" appeared in *The Philadelphia Inquirer.* The article contained the following excerpt:

> Leo Goldner, a Manhattan stock broker who invested in one of the clubs, said the clubs would not have done well regardless of how much money was invested. "They were totally mismanaged," he said.

On January 26, 1983, this suit for defamation was filed.

## II. DISCUSSION

### A. *Motion to Dismiss for Failure to State a Cause of Action*

■ Defendant Goldner contends that the language attributable to him is not defamatory as a matter of law and that, if defamatory, the defamation extends against the corporation or corporations which operate the clubs, and not plaintiff. In Pennsylvania to state a cause of action for defamation, the plaintiff must allege the following: (1) the defamatory character of the communication; (2) the communication refers to the plaintiff; (3) the third party's understanding of the communication as defamatory in character and its reference to the plaintiff; and, (4) injury to plaintiff. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971). In the present case, the article on its face speaks to mismanagement by plaintiff himself which may be defamatory. Defendant Goldner is quoted in the article as saying, "They [the clubs] were totally mismanaged." Moreover, the words of Goldner when read within the context of the entire article can readily be understood to refer to plaintiff. For these reasons, defendant's motion to dismiss for failure to state a cause of action must be denied.

### B. *Motion to Dismiss for Lack of Personal Jurisdiction*

■ Defendant Goldner contends that he has no contacts with Pennsylvania and that there is no personal jurisdiction over him. *Affidavit of No Jurisdiction of Leo Goldner.* In a diversity action, a federal court must undertake a two-part test to determine if the exercise of personal jurisdiction over a non-resident defendant is proper. First, defendant's conduct must bring him within the requirements of the forum state's long-arm statute. *Controlled Metals Inc. v. Non-Ferrous International Corp.,* 410 F.Supp. 339, 341 (E.D.Pa.1976); *Donner v. Tams-Witmark Music Library Inc.,* 480 F.Supp. 1229, 1231–1232 (E.D.Pa.1979). Second, assuming that the requirements of the long-arm statute are fulfilled, it must be established that the defendant had such minimal contacts with the forum that the exercise of personal jurisdiction will not offend due process. *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

#### (1) Telephone Call with Reporter

■ Defendant Goldner contends that there is no personal jurisdiction by reason of the isolated telephone call by the reporter from *The Philadelphia Inquirer.* Plaintiff contends, however, that under 42 Pa.C.S.A. § 5322(a)(4) there is personal jurisdiction because defendant Goldner made defamatory statements from New York which caused foreseeable tortious injury in Pennsylvania.

Defendant cites *McBreen v. Beech Aircraft Corp.,* 543 F.2d 26 (7th Cir.1976), in support of the contention that there is no jurisdiction. *McBreen* is, however, distinguishable from the facts of our case. In *McBreen,* certain alleged defamatory statements were made by defendant Robert Martin, a citizen of Kansas, about plaintiff Peter J. McBreen, a citizen of Illinois. These statements appeared in *Business Insurance,* a publication which was distributed in the Illinois area. Defendant, a law-

yer, received a long distance call at his office in Wichita, Kansas, from a person who identified himself as a reporter for *Business Insurance.* The reporter inquired about a suit recently filed by Martin on behalf of Beech Aircraft Corporation. Martin did not know where the call originated and there was no discussion of the place of publication or the areas of distribution of *Business Insurance. Id.* at 28. Affirming the district court, the court of appeals held that, under these circumstances, the single, isolated telephone exchange, initiated by the reporter, was not sufficient to confer personal jurisdiction over Martin. *Id.* at 30–32. *McBreen* is different from the present case, however, because in *McBreen* the defendant did not know where the call originated, the place of publication, or the areas of distribution of the magazine in which his statements were published.

In *Cole v. Doe,* 77 Mich.App. 138, 258 N.W.2d 165 (1977), a case more factually similar to this case then *McBreen,* the Michigan Court of Appeals held that a defendant involved in public relations could reasonably foresee that his defamatory statements to a national reporter in California concerning a person connected to the Michigan automotive industry could ultimately result in publication in a Michigan paper like *The Detroit News.* The *Cole* court thus concluded that there was a proper basis for personal jurisdiction over the defendant in a defamation suit filed in Michigan. 258 N.W.2d at 168. In the present case, defendant Goldner was an experienced investor in Club Nautilus. Moreover, the defendant was fully aware that the reporter was from *The Philadelphia Inquirer* and that it was a major metropolitan newspaper in Pennsylvania with a major distribution in the Philadelphia area. It was readily foreseeable to Goldner that his statements about plaintiff could be published in the Philadelphia area and result in harm to plaintiff. *See also Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 333–334 (5th Cir.1982); *Rusack v. Harsha,* 470 F.Supp. 285, 291 (M.D.Pa.1978). For this reason the Court holds that, under all the circumstances, defendant's conduct brings him within the requirements of Pennsylvania's long-arm statute, and furthermore, that defendant had such minimal contacts with Pennsylvania that the exercise of personal jurisdiction will not offend due process.

(2) Participation in Lawsuit in State Court

■ A second ground offered by plaintiff in support of personal jurisdiction over defendant Goldner is Goldner's joinder as a party plaintiff in a lawsuit pending in the Court of Common Pleas of Montgomery County, Pennsylvania, by stockholders of the White Marsh Club against Dion and others. *Barash, et al. v. Club Nautilus, Inc., et al.,* No. 82–19660 (Court of Common Pleas, Montgomery, Pennsylvania). On December 30, 1982, the state court action was filed. On January 21, 1983, defendants filed preliminary objections in which defendants raised, among other things, the failure of plaintiffs to join Goldner as an indispensable party. On January 26, 1983, the present defamation action was filed. On March 17, 1983, defendant Goldner filed this motion to dismiss. However, on March 23, 1983, Goldner *voluntarily* joined as a party plaintiff in the state court action under a stipulation and order filed by Jack W. Bernard, Esquire with defendants. Mr. Bernard agreed to serve as counsel for Goldner in the state court action. Under these facts, the Court holds that defendant Goldner has purposely availed himself of the privileges, benefits and protections of the forum state so as to confer personal jurisdiction over him in the present case. *See Adams v. Saenger,* 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938).

At oral argument, counsel for Goldner readily conceded that Goldner voluntarily joined in the state lawsuit, that Goldner is represented by counsel in the state court action, and that Goldner did not exercise his right to refuse to submit to the jurisdiction of the state court in that case on the basis that there was no personal jurisdiction over him. For these reasons, defendant has sufficient contacts to make the exercise of personal jurisdiction over him reasonable

and defendant's motion to dismiss for lack of personal jurisdiction must be denied.