**Dr. Harold P. McDONALD,
Jr., Plaintiff,**

v.

**ST. JOSEPH'S HOSPITAL OF ATLAN-
TA, INC., Georgia Baptist Hospital, Dr.
Earnest W. Franklin, III, Dr. Ted L.
Staton and Clair E. Cox, Defendants.**

**Civ. A. No. C80–1295A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 9, 1983.

R.M. Bernhardt, P.C., Atlanta, Ga., for plaintiff.

A. Felton Jenkins, J. Bruce Welch, Gordon Smith, Edwin Pearce, Robert Smith, Poole, Pearce, Cooper & Smith, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

The gravamen of plaintiff's action is that the defendants violated the federal antitrust laws, as well as several state laws, by denying him medical staff privileges at Saint Joseph's Hospital and Georgia Baptist Hospital. Dr. Clair E. Cox, who was added as a party defendant pursuant to this court's Order of September 20, 1982, now moves this court to dismiss the claims against him for lack of personal jurisdiction and improper venue, or, alternatively, for summary judgment.

FACTS

Plaintiff is a licensed physician who has been practicing urology as a specialty in Atlanta, Georgia, since 1977. In 1978, plaintiff filed applications with Saint Joseph's Hospital and Georgia Baptist Hospital seeking appointment to their respective medical staffs, both of which applications were denied. The denials led plaintiff to file the present lawsuit in which he alleges that there was an antitrust conspiracy to prevent him from practicing urological surgery in Northeast Atlanta and from developing the urological technic known as cryosurgery.

Central to the motion before the court is the role of Dr. Clair E. Cox in the decisions to deny staff privileges to plaintiff. Dr.

Cox is a citizen of Tennessee and Chief of the Department of Urology at the University of Tennessee College of Medicine in Memphis, Tennessee. As Chief of the Department of Urology, Dr. Cox supervised plaintiff from 1972 until 1978 when plaintiff was an Associate Professor in the Department of Urology at the University of Tennessee College of Medicine.

After plaintiff applied to Saint Joseph's Hospital, Dr. Staton (a defendant in this case), who was chief investigator for Saint Joseph's Hospital, called Dr. Cox in February, 1979, and asked him to appraise plaintiff's performance as a member of the Department of Urology. During that telephone conversation Dr. Cox gave a negative appraisement of plaintiff. Dr. Staton called Dr. Cox again in September, 1979, to confirm this negative appraisement. Dr. Cox's appraisement apparently became a part of the basis for Saint Joseph's denial of staff privileges and allegedly also had an adverse impact on plaintiff's application to Georgia Baptist.[1]

According to plaintiff, Dr. Cox also made statements regarding plaintiff in two pre-1978 telephone conversations with Mark Wilkiemeyer and W. Perrin Nicholson, two Atlanta urologists, which plaintiff contends contributed to his being denied staff privileges at the defendant hospitals.[2]

All telephone conversations described were initiated by the Atlanta residents and not by Dr. Cox. Dr. Cox had no other significant contacts with the state of Georgia other than receiving a letter from the Administrator of Georgia Baptist Hospital (Dr. Robert L. Zwald) requesting information concerning plaintiff's relationships while he was a member of the staff of the University of Tennessee Urology Department. (Dr. Cox did not respond to this letter.)

DISCUSSION

The first question presented by defendant Cox's motion is whether this court has

---

1. Plaintiff states that at this point he has been unable to ascertain the basis for Georgia Baptist's denial of staff privileges to him, but maintains that the information which Saint Joseph's gathered from Cox was furnished, directly or indirectly, to Georgia Baptist.

2. Dr. Cox does not remember these conversations.

personal jurisdiction over a non-resident defendant whose only significant contacts with the state of Georgia are allegedly defamatory telephone conversations, none of which were initiated by the defendant, with Georgia residents, one of whom is an alleged co-conspirator.[3]

■ It is well settled in this circuit that in a federal question case, such as this one, where Congress has not provided for nationwide service of process, the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is the proper test of the court's personal jurisdiction. *Burstein v. State Bar of California,* 659 F.2d 670, 672 n. 3 (5th Cir.1981). Thus, this court has personal jurisdiction over Dr. Cox only if he has "minimum contacts" with Georgia such that maintenance of the suit against him would not offend "traditional notions of fair play and substantial justice." *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158.

The factors relevant to the determination of fairness can be identified from the Supreme Court's treatment of the jurisdictional issue in several cases. In *International Shoe, supra,* the Court evaluated the facts in light of the inconvenience to the defendant in having to litigate away from its residence, the relationship between the defendant's contacts with the forum and the cause of action, the quality and nature of the contacts, and the extent to which the defendant "exercise[d] the privilege of conducting activities within [the] state ... [and] enjoy[ed] the benefits and protection of the laws of that state." 326 U.S. at 316–319, 66 S.Ct. at 158–159.

In *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court considered the interest of the forum state in maintaining the suit, the difficulty to the plaintiff of pursuing the defendant to its home state, and the location of the likely witnesses. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct.

1228, 2 L.Ed.2d 1283 (1958), the Court emphasized the factor of whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239. That emphasis was reiterated in *Kulko v. Superior Court of California,* 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978). The *Kulko* court also stated that a reasonable person in the defendant's place would not have expected his actions to result in having to litigate so far from his home. *Id.* at 97, 98 S.Ct. at 1699.

■ Finally, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court's most recent exegesis of the "minimum contacts" rule, identified as relevant:

[T]he burden on the defendant, ... the plaintiff's interest in obtaining convenient and effective relief, ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive policies....

*Id.* at 292, 100 S.Ct. at 564. (Citations omitted). However, the Court went on to state:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

---

**3.** Plaintiff apparently concedes that the receipt of mail from Georgia does not subject Cox to this court's personal jurisdiction. *See Hanson v.*

*Id.* at 294, 100 S.Ct. at 565. The Court also noted that foreseeability of injury alone is not a sufficient benchmark for personal jurisdiction, *Id.* at 295, 100 S.Ct. at 566, and that:

> the foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 100 S.Ct. at 567.

These considerations[4] lead this court to conclude that defendant Cox would be denied due process if he were subjected to suit in this forum. While it may be true that the relative conveniences and inconveniences weigh in favor of trying the claims against Cox here, that Cox's contacts are directly related to the cause of action, and that the State of Georgia has a vital interest in the dispute, the court cannot conclude that the quality and nature of Cox's contacts are such that he purposefully availed himself to the benefits and protections of Georgia law or that Cox should have reasonably foreseen being haled into court in Georgia.

*Direct Contacts*

■ Although there are a number of cases in which the requisite "minimum contacts" were found when a nonresident defendant's only contact with the forum state was the introduction of a single misrepresentation into the forum state via a telephone conversation, *see, e.g., Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1275, 75 L.Ed.2d 496; *National Egg Co. v. Bank Leumi le-Israel B.M.,* 504 F.Supp. 305 (N.D.Ga.1980); *State ex rel. Advanced Dictating Supply, Inc. v. Dale,* 269 Or. 242, 524 P.2d 1404 (1974); *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D. Ill.1973), in those cases the *nonresident*

*defendant* was the one who initiated the telephone call or the telephone conversation was not an "isolated instance." This case presents the different question of whether allegedly defamatory statements made in four isolated telephone conversations, which were not initiated by the nonresident defendant, suffice to sustain the exercise of personal jurisdiction over him.

Even though neither party cited this case, the court finds the case of *McBreen v. Beech Aircraft Corp.,* 543 F.2d 26 (7th Cir.1976), instructive. In that case, the nonresident defendant's only contact with the forum was one allegedly defamatory telephone conversation which was neither initiated or solicited by the defendant. As the court described it:

> While situated in his law office in Wichita, Kansas, he answered a telephone call, found a reporter on the other end of the line, and responded to the reporter's inquiries about a case [the defendant] had recently filed. This telephone exchange, initiated by the reporter, constitutes the only contact between the defendant and the forum....

*Id.* at 30. The court concluded:

> [The defendant] was not, in the ordinary course of his affairs, deliberately placing his statements into the "stream of commerce" so that we would be justified in presuming that he had purposefully availed himself of the benefits and protections afforded by Illinois ... Hence his contacts with the State of Illinois were insufficient to justify the exercise of *in personam* jurisdiction by the district court.

*Id.* (Citation omitted). The court went on to distinguish cases in which a single allegedly defamatory telephone exchange had supported personal jurisdiction, pointing out that unlike the defendants in those cases, the defendant in *McBreen* was not in

---

**4.** The Fifth Circuit, in a decision with precedential value to this court, has described the due process test for personal jurisdiction as follows: First, "there must be some minimum contact with the state which results from an affirmative act of the defendant." Secondly, "it must be fair and reasonable to require the defendant to come into the state and defend the action."
*Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir.1974).

the habit of transmitting information about his pending lawsuits into the stream of commerce and he had not initiated or solicited the telephone exchange.

Like the defendant in *McBreen*, defendant Cox did not initiate or solicit the telephone conversations. In addition, there is no evidence that he was in the habit of transmitting information about past subordinates into the "stream of commerce." Although in *McBreen*, the nonresident defendant had engaged in *one* telephone exchange, while in this case defendant alleges that Cox engaged in *four* telephone exchanges, the court does not find this distinction critical. The conversations were still isolated in that they were not part of a broader business or social relationship and they were essentially unrelated to each other.

*McBreen* can also be distinguished from this case on the ground that in that case the nonresident defendant did not know the caller was in the forum state or that the information would be used in the forum state, while in this case defendant Cox knew he was talking to someone in Georgia and that the information was going to be used in Georgia. However, this distinction is also not dispositive. The *McBreen* court did not base its conclusion on the defendant's ignorance as to where the allegedly defamatory statements were projected or where they were to be used,[5] but on the facts that the statements were isolated instances and the defendant did not initiate the telephone exchange.

Based on *McBreen*, the court finds Cox's direct contacts with Georgia to be insufficient to support the exercise of personal jurisdiction over him.

*Indirect Contacts*

▮ Plaintiff argues alternatively that Cox's membership in the alleged antitrust conspiracy provides the requisite "minimum contacts" to sustain personal jurisdiction over him. While the court recognizes the "conspiracy theory of personal jurisdiction" whereby jurisdiction can be obtained over a nonresident conspirator who has insufficient direct contacts with the forum when substantial acts in furtherance of the conspiracy were committed in the forum,[6] *see National Egg Co. v. Bank Leumi le-Israel B.M., supra,* 504 F.Supp. at 305, it finds that plaintiff has not established this court's jurisdiction over Cox under this theory either.

The court realizes that the determination of jurisdiction under this theory, being dependent on the existence of the alleged conspiracy and Cox's membership therein, is intertwined with the merits of the lawsuit and that, as a result, plaintiff enjoys a relaxed burden of proof with respect to the jurisdictional facts, *Vermont Castings, Inc. v. Evans Products Co.,* 510 F.Supp. 940, 944 (D.Vt.1981) (A *prima facie* showing of jurisdiction is all that is required when determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability); *Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559 (M.D.N.C. 1979); *McLaughlin v. Copeland,* 435 F.Supp. 513 (D.Md.1977); *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973), but finds that plaintiff has not even made a *prima facie* showing of Cox's participation in the alleged antitrust conspiracy.

Plaintiff's only evidence of Cox's membership in the alleged conspiracy is that Cox had two telephone conversations with an alleged co-conspirator in which he gave

---

**5.** In fact, the *McBreen* court expressly rejected the district court's application of a foreseeability-of-injury test. 543 F.2d at 29. The Supreme Court has also rejected such a test. *World-Wide Volkswagen, supra,* 444 U.S. at 295, 100 S.Ct. at 566.

**6.** The conspiracy theory is based on the principle that the constitutional requirement of minimum contacts between a non-resident defend-

ant and the forum can be met if there is a substantial connection between the forum and the conspiracy entered into by such defendant. *See Vermont Castings, Inc. v. Evans Products Co.,* 510 F.Supp. 940 (D.Vt.1981).

For a thorough discussion of the conspiracy theory of jurisdiction, *see Cawley v. Bloch,* 544 F.Supp. 133 (D.Md.1982).

allegedly false negative information about plaintiff, knowing that the information would be used in the decision to grant or deny plaintiff staff privileges, and that defendants Cox and Staton offer "wildly different" accounts of the telephone conversations.[7] Despite plaintiff's insistance, this court does not find that this evidence creates an inference of Cox's membership in a conspiracy to exclude plaintiff from practicing urology in Northeast Atlanta for anticompetitive reasons. The telephone conversations were isolated instances; there is no evidence that Cox and Staton had any other contacts before or after these conversations. The fact that Cox knew that a negative report about plaintiff might cause him to be denied staff privileges does not imply that Cox knew of, much less was a part of, the alleged conspiracy. Even the evidence that the information given may have been false does not lead to the conclusion that Cox was a member of the alleged conspiracy. Finally, the different accounts of the conversations may show that one party is lying or has a faulty memory, but it hardly evidences membership in an antitrust conspiracy.

There is no evidence from which this court can infer knowledge of, or participation in, the alleged conspiracy; the court thus concludes it would be unreasonable to exercise jurisdiction over Cox based on that conspiracy.

CONCLUSION

Considering the facts of this case, this court finds that the quality and nature of Cox's activities in Georgia are not such that "it is 'reasonable' and 'fair' to require him to conduct his defense" here. *Kulko v. Superior Court of California, supra,* 436 U.S. at 92, 98 S.Ct. at 1696. The court, therefore, GRANTS defendant Cox's motion to dismiss for lack of personal jurisdiction.

This Order renders unnecessary a ruling on Cox's motion to dismiss for improper venue as well as his motion for summary judgment.

---

7. When Dr. Cox was confronted by plaintiff's attorney with defendant Staton's written memorandum of the telephone conversation, defendant Cox denied he had said what Staton testified he had said. Deposition of Clair E. Cox, pp. 20–30.