J. Charles MANN, Plaintiff,

v.

TOM JAMES COMPANY, Spencer Hays, James McEachern, Robert Sherrer, John Doe Company No. 1 and John Doe Companies Nos. 2–5, Defendants.

TOM JAMES COMPANY, Counterclaim Plaintiff,

v.

J. Charles MANN, Counterclaim Defendant.

Spencer HAYS and James McEachern, Third–Party Plaintiffs,

v.

Nishat AHMED, Third–Party Defendant.

Civ. A. No. 92–CV–0388.

United States District Court,
E.D. Pennsylvania.

Oct. 8, 1992.

Alan C. Milstein, Sherman, Silverstein, Kohl, Rose & Podolsky, Pennsauken, N.J., for Spencer Hays, James McEachern.

Vernon L. Francis, Dechert, Price & Rhoads, Philadelphia, Pa., for Nishat Ahmed.

## MEMORANDUM

ROBRENO, District Judge.

Is a non-resident defendant subject to personal jurisdiction in Pennsylvania on the basis of allegedly defamatory statements he made, while outside Pennsylvania, during the course of a single unsolicited telephone conversation which emanated from Pennsylvania? I find that, under all the circumstances of this case, to do so would offend due process notions. Therefore, the third-party defendant's motion to dismiss for lack of personal jurisdiction will be granted. Fed.R.Civ.P. 12(b)(2).

### A. *Background*

Third-party defendant Nishat Ahmed ("Ahmed") is a citizen and resident of California. According to the third-party complaint, Ahmed, while in California, made certain libelous and slanderous statements concerning third-party plaintiffs during the course of a telephone conversation initiated from Pennsylvania by J. Charles Mann ("Mann"). These statements made their way into the complaint filed by Mann in the main action in this case.[1] Third-party plaintiffs assert that Ahmed is amenable to suit in Pennsylvania pursuant to the Pennsylvania long arm statute, 42 Pa.Cons.Stat. Ann. § 5322(a).[2]

Ahmed has filed an affidavit stating that he is the president of a clothing business located in California, has never lived or worked in Pennsylvania, never conducted any business in Pennsylvania, and does not own any real estate in Pennsylvania. The affidavit further states that he received a single unsolicited telephone call from Mann during the Summer of 1991 and that during the course of the telephone conversation, he did not ask and Mann did not indicate from where Mann was calling. Ahmed states further that during the call, Mann, who was also involved in the clothing in-

dustry, asked for his business advice, because Mann "... was leaving [his employer] to establish his own business[,]" as Ahmed had done previously.

The third-party plaintiffs have responded by filing an excerpt of Mann's deposition. During the deposition, Mann testified that he called Ahmed to verify information concerning the complaint in the main instant action; that during the conversation he asked Ahmed whether to Ahmed's knowledge "[there were] any middleman companies ... that were owner controlled [by third-party plaintiffs] where they would buy, for example, wool through this middle company and then sell it to Tom James for a profit"; that Ahmed said "[y]es that did exist"; that Ahmed did not tell him the name of any of the companies but said he believed these events had occurred during the "1970s and possibly into the early to mid '80s"; and that Ahmed said "he would testify to that fact". Deposition of Mann at 128–129, Exhibit "C" to *Defendants/Third–Party Plaintiffs Brief in Opposition to Third–Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.*

### B. *Discussion*

 Under the Federal Rules of Civil Procedure, personal jurisdiction over a nonresident defendant may be exercised to the extent permitted under state law. Fed. R.Civ.P. 4(e). The Pennsylvania long arm statute, provides for the exercise of personal jurisdiction over a nonresident defendant that is coextensive with the due process clause of the United States Constitution. 42 Pa.Cons.Stat.Ann. § 5322(b); *Time Share Vacation Club v. Atlantic Resorts Ltd.,* 735 F.2d 61, 63 (3d Cir.1984); *Colmen Fin. Services v. Charter Equip. Leasing Corp.,* 708 F.Supp. 664, 666 (E.D.Pa.1989). Thus, whether there is personal jurisdiction over Ahmed in this case must be tested

---

**1.** Mann is the plaintiff in the main action in this case. Mann sued Tom James Company ("Tom James") and a number of other individuals and entities associated with Tom James and the clothing industry for numerous alleged business improprieties.

**2.** While third-party plaintiffs do not specify which section of the statute they are relying on, presumably, they are claiming jurisdiction under (a)(4) for "[c]ausing harm or tortious injury by an act or omission [while] outside this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(4).

under both the Pennsylvania long arm statute and the due process clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., Kubik v. Letteri,* — Pa. —, —, 614 A.2d 1110, 1112 (Pa.1992) (concluding as an initial matter that the acts of defendant within Pennsylvania confer personal jurisdiction under the long arm statute and also that the exercise of jurisdiction comported with due process requirements). The initial question of whether the acts of the defendant provide a cognizable bases for personal jurisdiction under the Pennsylvania long arm statute is one of state law. *Id.* However, the issue of whether that exercise comports with the constitutional requirements of due process is one of federal law. *Nolt & Nolt, Inc. v. Rio Grande, Inc.,* 738 F.Supp. 163, 165 (E.D.Pa.1990) (citing *Empire Abrasive Equip. Corp. v. H. H. Watson, Inc.,* 567 F.2d 554, 556 n. 1 (3d Cir.1977)). The frequency with which the latter issue has been visited by the Supreme Court bespeaks plainly of its constitutional significance. *See infra* at pp. 1295–1296.

■ Once the defendant raises a jurisdictional defense, the burden is on plaintiff to establish with reasonable particularity the sufficiency of defendant's contacts. *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985). The plaintiff may not rely upon the conclusory averments of the pleadings but must come forward with competent evidence that establishes the court's jurisdiction. "Once the motion is made, plaintiff must respond with actual proof, not mere allegations." *Patterson By Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir.) (quoting *Time Share,* 735 F.2d at 67 n. 9), *cert. denied,* — U.S. —, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

■ To satisfy the due process clause requirements, plaintiff may show that the defendant is subject either to "general jur-isdiction" or to "specific jurisdiction." *Provident Nat. Bank v. California Federal Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). To demonstrate the existence of general jurisdiction, the plaintiff must prove that the defendant had "continuous and systematic contacts with the forum state." *Id.* The facts required to support the exercise of general jurisdiction must be persuasive. *See Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982). Specific jurisdiction, on the other hand, is shown by establishing that the particular cause of action arose from the defendant's activities within the forum state. *Provident Nat. Bank,* 819 F.2d at 437. Since the instant case turns on a single telephone call, only specific jurisdiction is at issue.

The contours of specific jurisdiction defined in the Supreme Court jurisprudence, are not subject to precise delineation, the lines appearing to be "nicer than brighter." [3] *See also World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) ("defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court...."); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (whether the defendant committed "some act by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws").[4]

These somewhat amorphous formulations bottom out on a concern for "fairness," *see International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ("traditional notions of fair play and substantial justice"), based in large part on an assessment of the volitional nature of the defendant's activities. This was expressed by the Supreme Court as follows:

---

**3.** In determining the existence of minimum contacts "[few answers] will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

**4.** *See generally, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum....

*Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). The final question thus, is whether there is sufficient evidence of "purposeful availment" to support the assertion of personal jurisdiction. *NordFinance Inc, f/k/a Pkfinhas International Corp. v. Flynn*, No. 92–4096, 1992 WL 277979 (E.D.Pa. Oct. 2, 1992) (memorandum and order granting motion to dismiss) (Dalzell, J.). I now apply these principles to the instant case.

■ The conduct imputed to Ahmed, while committed outside of Pennsylvania, caused harm within Pennsylvania. This act would be sufficient to confer jurisdiction upon Ahmed pursuant to the long arm statute. 42 Pa.Cons.Stat.Ann. § 5322(a)(4); *see, e.g., Lacovara v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 551 F.Supp 601, 603 (E.D.Pa.1982). On this record, however, the third-party plaintiffs have failed to meet their burden of showing that this exercise of jurisdiction passes constitutional muster. Specifically, Ahmed did not seek to contact Mann and, pointedly, Ahmed did not originate the one phone call at issue. In fact, Mann's deposition is devoid of testimony that Mann told Ahmed that he was calling from Pennsylvania or that he [Mann] was planning to or even thinking of bringing a lawsuit in Pennsylvania. The statement by Mann that he called to "verify" the information, even assuming that the verification was connected with the filing of a complaint in Pennsyl-

vania, only proves that he [Mann] was seeking collaboration from Ahmed, not that Ahmed knew of the ostensible purpose of Mann's call.[5] *See Time Share*, 735 F.2d at 65 (unilateral activities of plaintiff insufficient to establish minimum contacts). In the final analysis, what third-party plaintiffs have produced by way of proof is receipt by Ahmed of an unsolicited phone call during which information relating to Ahmed's earlier employment was exchanged. Under no formulation of "fair play and substantial justice" can it be said that Ahmed "reasonably anticipated being haled into [a Pennsylvania] court," *World Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. at 567, or that he purposely availed himself of the privilege of conducting business in Pennsylvania, *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239, or that he purposely directed his activities to citizens of Pennsylvania,[6] *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. at 2182. *Accord McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir.1976) (allegedly defamatory statements made during the course of a single unsolicited phone call from newspaper reporter are not enough to confer personal jurisdiction when recipient did not know from where the call originated or the newspaper's area of publication).

*Dion v. Kiev*, 566 F.Supp. 1387 (E.D.Pa. 1983) is not to the contrary. In *Dion*, injury was claimed by plaintiff fitness club manager as a result of certain alleged defamatory statements made by defendant, a citizen of New York, about plaintiff, to a reporter from *The Philadelphia Inquirer*. Defendant, an investor in the fitness club venture, received a telephone call from an individual who identified herself as a reporter from *The Philadelphia Inquirer*, a publication that defendant knew to be a major metropolitan newspaper in Pennsyl-

---

**5.** The only statement in Mann's deposition that is possibly helpful to the cause of third-party plaintiffs is Mann's comment that Ahmed said "he would testify to [the information given over the phone]". Mann's deposition at 129. This statement, however, was not followed up by counsel. In its present form, it is ambiguous, at best, and subject to varying interpretations. "I'll testify to that fact", is, of course, a rhetorical colloquialism used to indicate strong adher-

ence to one's position. It is not commonly understood as an offer to jump into the vortex of ongoing litigation, particularly one 3,000 miles away.

**6.** In fact, the third-party plaintiffs are citizens of Tennessee and Texas, respectively. *See* third-party complaint ¶ 1.

vania with a major circulation in the Philadelphia area. The court found that "[i]t was readily foreseeable to [defendant] that his statements about plaintiff could be published in the Philadelphia area and result in harm to plaintiff." *Id.* at 1390. By contrast, in the present case, Mann apparently did not even tell Ahmed where he was calling from. Nor are there allegations that Mann disclosed to Ahmed any information from which it was reasonable for Ahmed to conclude that the information he provided Mann would end up in a pleading in Pennsylvania.[7]

For these reasons, the court holds, under all the circumstances, that there is insufficient evidence of purposeful availment on the part of Ahmed that would permit the exercise of personal jurisdiction without offending due process.

**7.** Apparently sensing the weakness of their argument in support of the existence of specific jurisdiction, third-party plaintiffs maintain that during certain unrelated business negotiations, representatives of another party involved in that other transaction expressed concerns which echoed substantially similar versions of the allegedly slanderous statements complained of by the third-party plaintiffs and attributable to Ahmed. However, no connection is provided between the information contained in the statements which surfaced during that other transaction and the statements allegedly attributed to Ahmed in this lawsuit. There is nothing in this record which provides a basis for third party-plaintiffs' averment that third-party defendant's counsel, who is apparently a member of the same law firm which represented the other party in the referenced business transaction, republished Ahmed's alleged defamatory statements to another party in an unrelated matter.