USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1692 TICKETMASTER-NEW YORK, INC., Plaintiff, Appellant, v. JOSEPH M. ALIOTO, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ _________________________ Before Torruella, Selya and Stahl, Circuit Judges. ______________ _________________________ Jonathan W. Lubell, with whom Malcolm I. Lewin, Frank ____________________ __________________ _____ McClain-Sewer, Morrison Cohen Singer & Weinstein, Stephen R. _____________ ___________________________________ ___________ Wainwright, and Wainwright, Wainwright, Wainwright, Wainwright & __________ _________________________________________________ Wainwright were on brief, for appellant. __________ James A. G. Hamilton, with whom Theodore F. Schwartz, Jerry ____________________ ____________________ _____ Cohen, and Perkins, Smith & Cohen were on brief, for appellee. _____ ______________________ _________________________ April 13, 1994 _________________________ SELYA, Circuit Judge. This case probes the frontiers SELYA, Circuit Judge. ______________ of the doctrine of personal jurisdiction in a context fraught with constitutional implications. The issue, simply put, is this: Can a Massachusetts-based court, consistent with the Due Process Clause, assert jurisdiction over a California resident who is alleged to have made a defamatory comment during an unsolicited telephone interview with a staff reporter for a Massachusetts newspaper? We conclude, on the facts of this case, that the lower court correctly disclaimed jurisdiction. I. BACKGROUND I. BACKGROUND Inasmuch as the district court dismissed this suit for failure of the plaintiff to make a prima facie jurisdictional _____ _____ showing, see Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st ___ ____ ____________________ Cir. 1992), we draw the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff. Of course, we do not credit conclusory allegations or draw farfetched inferences. See generally Dartmouth Review v. ___ _________ _________________ Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (discussing line _______________ between "facts" and "conclusions" for purposes of a motion to dismiss). Defendant-appellee Joseph M. Alioto is an attorney practicing in California. Among his other cases, Alioto is pressing a class action in the California courts against Ticketmaster-Southern California, Inc. (T-SC). T-SC, a 2 California-based corporation, is affiliated with Ticketmaster-New York, Inc. (T-NY), a Delaware corporation. Both Ticketmaster entities are engaged in the business of selling ducats to entertainment events. The litigation between T-NY and Alioto finds its genesis in the decision by the Boston Globe, a daily newspaper, ____________ to undertake an investigation into pricing practices on "Ticketmaster's" part.1 In conducting this investigation, a Globe reporter conversed by telephone with Alioto. The plaintiff _____ does not allege, and the record does not suggest, that Alioto dialed the telephone or otherwise initiated the call. The record is equally barren of any showing that Alioto solicited the inquiry2 or that more than one call occurred. It is clear, nevertheless, that Alioto, who was in California, knew when speaking that his comments would inform a story slated for publication in a newspaper circulated chiefly in Massachusetts. The investigation culminated in a front-page expose that hit the newsstands on Sunday, September 20, 1992, under the banner headline, "Rising ticket fees pad concert profits." The ensuing article contained over fifty paragraphs. Well past the midpoint, the article mentioned mounting complaints about price ____________________ 1The article that capped this investigation makes no attempt to distinguish among corporate entities (although it contains one vague reference to "Ticketmaster and its affiliates"). At no point does the article refer by name to either T-NY or T-SC. 2Although there is a passing allusion in the record to a press release issued by Alioto regarding the lawsuit against T- SC, there is no indication that he forwarded this release to Massachusetts or that it sparked the Globe's story. _____ 3 gouging in New York and California. It then reported that "three class action antitrust lawsuits" had recently been filed "against Ticketmaster" in California. There followed the paragraph around which this controversy revolves (buried deep in the body of the article). We quote the allegedly offending paragraph in full, and, in the interests of context, add the beginning of the following paragraph. Attorney Joseph M. Alioto, who filed one of the suits, charged that kickbacks are the key to Ticketmaster's California monopoly. "They're nothing more than a straight bribe," he said. Ticketmaster and its affiliates took on their California adversaries in typical aggressive fashion, . . . Based on this reported comment, T-NY brought suit against Alioto in the United States District Court for the District of Massachusetts. Invoking diversity jurisdiction, 28 U.S.C. 1332 (1988), it alleged that Alioto, with the requisite intent, conveyed and/or caused to be conveyed certain defamatory impressions of and concerning T-NY, namely, that T-NY engaged in bribery and related criminal conduct. In due season, Alioto moved to dismiss. T-NY objected. The district judge heard oral argument and dismissed the action for lack of in personam jurisdiction, concluding that appellant __ ________ failed to make the requisite showing at every stage of the obligatory jurisdictional inquiry under the due process clause. See United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d ___ _________________________ ______________________ 1080, 1089 (1st Cir. 1992) (Pleasant St. I) (discussing nature of ______________ requisite inquiry). Two perceptions figured prominently in the 4 district court's reasoning. First, the defendant did not actively shape and focus the reporter's story, but, rather, passively responded to a telephone call. Second, the allegedly defamatory comment dealt with the California activities of a California corporation, T-SC, and did not pertain to T-NY. Plaintiff appeals. Because the court below dismissed the case on legal grounds, without convening an evidentiary hearing or resolving contested evidentiary questions, appellate review is plenary. See United Electrical Workers v. 163 Pleasant ___ _________________________ ____________ St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993) (Pleasant St. II); _________ _______________ Boit, 967 F.2d at 675. In conducting this tamisage, we are not ____ wedded to the district court's rationale, but remain free to affirm the judgment below on any independently sufficient ground made manifest by the record. See Martel v. Stafford, 992 F.2d ___ ______ ________ 1244, 1245 (1st Cir. 1993). II. ANALYSIS II. ANALYSIS To subject a non-resident defendant to its jurisdiction in a diversity case, a court and for this purpose, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state, see ___ General Contracting & Trading Co. v. Interpole, Inc., 940 F.2d __________________________________ _______________ 20, 23 n.4 (1st Cir. 1991) must find contacts that, in the aggregate, satisfy the requirements of both the forum state's long-arm statute and the Fourteenth Amendment.3 See Pleasant ___ ________ ____________________ 3To be sure, the extent of the necessary jurisdictional showing varies depending upon whether a litigant asserts jurisdiction over an adverse party under a theory of "general" or 5 St. I, 960 F.2d at 1086 ("In Massachusetts, a court may exercise _____ personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute or rule and its ___ exercise does not offend due process."); Bond Leather Co. v. Q.T. ________________ ____ Shoe Mfg. Co., 764 F.2d 928, 931 (1st Cir. 1985) (similar). The ______________ district court determined that T-NY satisfied neither of these two prerequisites. We explore these determinations. A. The State Statute. A. The State Statute. _________________ The applicable Massachusetts statute, familiarly known as "section 3(c)," deals with torts committed by persons who have no ongoing relationship with the forum state. The language of this provision tracks the Uniform Interstate and International Procedure Act, and differs significantly from other leading formulations. See Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, ___ ______ __________________ 663-64 (1st Cir. 1972); see also Margoles v. Johns, 483 F.2d ___ ____ ________ _____ 1212, 1216 (D.C. Cir. 1973). The statute states: A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this Commonwealth . . . . Mass. Gen. Laws ch. 223A, 3 (1986). Although the lower court did not reach the question of jurisdiction under state law, we have pondered whether the case might more appropriately be dispatched on that basis. After all, ____________________ "specific" jurisdiction. See Donatelli v. National Hockey ___ _________ ________________ League, 893 F.2d 459, 462-63 (1st Cir. 1990) (elucidating ______ standards and enumerating differences). Here, plaintiff's case stands or falls on a theory of specific jurisdiction. 6 "[i]t has long been a basic tenet of the federal courts to eschew the decision of cases on constitutional grounds unless and until all other available avenues of resolution [have been] exhausted." Aggarwal v. Ponce Sch. of Medicine, 745 F.2d 723, 726 (1st Cir. ________ _______________________ 1984). But here, as we explain below, the state-law issues are extremely murky. Thus, on balance, we agree with the district court that it makes sense to resolve the jurisdictional question on constitutional grounds. In the first place, although logic suggests that, on these facts, the defendant cannot be said to have performed "an act" in Massachusetts, that suggestion is not easily reconciled with Murphy. There, we ruled that an allegedly tortious act ______ committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c). See Murphy, 460 F.2d at 664. While Murphy can be distinguished ___ ______ ______ on the ground that it was decided in the context of fraudulent misrepresentation, as opposed to defamation,4 its interpretation of section 3(c) is worded in general terms and its reasoning conceivably could be transferred to the defamation context. Despite our profound reservations about extending the Murphy ______ ____________________ 4Appellant argues that we have already extended Murphy to ______ the defamation arena in Hugel v. McNell, 886 F.2d 1 (1st Cir. _____ ______ 1989), cert. denied, 494 U.S. 1079 (1990). We do not think Hugel _____ ______ _____ must necessarily be read so broadly. That case turned on a construction of the New Hampshire long-arm statute, N.H. Rev. Stat. Ann. 510:4 (1993), and the New Hampshire statute, unlike its Massachusetts counterpart, does not embody the language of the Uniform Act. 7 rationale,5 it spreads a shadow of uncertainty over the state- law issues. In the second place, because we are skeptical that defendant made any remark "of and concerning" T-NY, we harbor doubts whether defendant can be said to have inflicted any "tortious injury" within the meaning of section 3(c).6 We are, however, hesitant to move beyond an expression of skepticism. At this stage of the proceedings, appellant has not had the benefit of an evidentiary hearing or a comparable opportunity (say, access to the full-dress summary judgment protocol after a reasonable period of discovery) for presenting proof. Thus, it may be too early to reach the state-law issues. To be sure, our reservations about one or both of these ____________________ 5Intuitively, it would seem hard to characterize the act of publishing an allegedly defamatory remark outside the forum state as an act within the forum state. In fact, no fewer than five courts applying long-arm statutes patterned after the Uniform Act have eschewed Murphy's reasoning in the defamation context and ______ declined to assert jurisdiction on this basis. See Reuber v. ___ ______ United States, 750 F.2d 1039, 1049 (D.C. Cir. 1984); Dietrich v. ______________ ________ Wisconsin Patients Comp. Fund, 485 N.W.2d 614, 617-18 (Wis. Ct. ______________________________ App. 1992); Wheeler v. Teufel, 443 N.W.2d 555, 558 (Minn. Ct. _______ ______ App. 1989); Ramada Inns, Inc. v. Drinkhall, No. 83C-AU-ty, ___________________ _________ unpaginated slip op. available on LEXIS (Del. Super. Ct. 1984); Zinz v. Evans & Mitchell Indus., Inc., 324 A.2d 140, 144 (Md. ____ _______________________________ App. 1974); see also St. Clair v. Righter, 250 F. Supp. 148, 151 ___ ____ _________ _______ (W.D. Va. 1966) (using similar reasoning to interpret long-arm statute containing "tortious act" language); see generally ___ _________ Margoles, 483 F.2d at 1218-19 (criticizing Murphy's ________ ______ interpretation of language drawn from the Uniform Act). 6In Massachusetts, a court has power to determine, as a matter of law, that a particular remark is not susceptible of any defamatory construction "of and concerning" the plaintiff, and, therefore, not actionable. See Eyal v. Helen Broadcasting Corp., ___ ____ ________________________ 583 N.E.2d 228, 232 (Mass. 1991). At least one court has used this type of power to dismiss a defamation case on jurisdictional grounds. See Wyatt v. Kaplan, 686 F.2d 276, 282 (5th Cir. 1982). ___ _____ ______ 8 points might well be resolved upon closer perscrutation. But there is no need to sally forth. Because it is apodictic that a jurisdiction-seeking plaintiff must satisfy the demands of not only state law but also the federal Constitution, see Pleasant ___ ________ St. I, 960 F.2d at 1086, and because T-NY's case cannot pass _____ constitutional muster, we choose to bypass the statutory phase of the jurisdictional inquiry. Consistent with this approach, we accept appellant's alleged facts as true for present purposes and assume arguendo that the allegedly defamatory remark concerned T- ________ NY. B. The Due Process Clause. B. The Due Process Clause. ______________________ Divining personal jurisdiction is "more an art than a science." Donatelli v. National Hockey League, 893 F.2d 459, 468 _________ ______________________ n.7 (1st Cir. 1990).7 In broad outline, a party wishing to validate a court's jurisdiction must show that "minimum contacts" exist between the defendant and the forum state. International _____________ Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). To ________ ___________________ establish minimum contacts on a theory of specific jurisdiction, a plaintiff must first demonstrate that its cause of action "arises out of, or relates to" defendant's contacts with the forum state, Helicopteros Nacionales de Colombia, S.A. v. Hall, __________________________________________ ____ 466 U.S. 408, 414 (1984). Then, the plaintiff must demonstrate the deliberateness of the defendant's contacts, or, phrased ____________________ 7In Donatelli, 893 F.2d at 462-65, we chronicled the _________ historical development of due process standards for personal jurisdiction, and in Pleasant St. I, 960 F.2d at 1089, we _______________ rehearsed the current state of the law. 9 another way, that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). ______ _______ Even if a plaintiff succeeds in making these two showings, it is not home free. The defendant may nonetheless avoid having to defend in a strange place if it can establish that allowing the suit to go forward would be inconsistent with "fair play and substantial justice," International Shoe, 326 U.S. __________________ at 320. Following this analytic model, we first assess relatedness and purposeful availment in terms of their applicability to the case at hand. Finding them to be inconclusive in this rather odd situation, we then mull the extent to which considerations of fairness and substantial justice must influence our ultimate decision. 1. Relatedness. The requirement that a suit arise out 1. Relatedness. ___________ of, or be related to, the defendant's in-forum activities comprises the least developed prong of the due process inquiry. See Pleasant St. I, 960 F.2d at 1089 & n.9; see also Carnival ___ _______________ ___ ____ ________ Cruise Lines v. Shute, 499 U.S. 585, 589 (1991) (declining to ____________ _____ reach issue despite having certified it for review). We know to a certainty only that the requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action. The Court has kept its own counsel on the question of whether, on the one hand, the two halves of the relatedness 10 requirement are merely two ways of expressing the same thought or, on the other hand, they are meant to import different values into the jurisdictional equation. See Helicopteros, 466 U.S. at ___ ____________ 415 n.10 (reserving question). For our part, we think it significant that the constitutional catchphrase is disjunctive in nature, referring to suits "aris[ing] out of, or relat[ing] to," __ in-forum activities. Id. at 414 (emphasis supplied). We believe ___ that this added language portends added flexibility and signals a relaxation of the applicable standard. A number of other courts share this belief. See, e.g., City of Virginia Beach v. Roanoake ___ ____ ______________________ ________ River Basin Ass'n, 776 F.2d 484, 487 (4th Cir. 1985); Southwire _________________ _________ Co. v. Trans-World Metals & Co., 735 F.2d 440, 442 (11th Cir. ___ _________________________ 1984); Thos. P. Gonzalez Corp. v. Consejo Nacional de Production, _______________________ ______________________________ 614 F.2d 1247, 1254 (9th Cir. 1980); see also In re Oil Spill by ___ ____ __________________ the Amoco Cadiz, 699 F.2d 909, 915 (7th Cir. 1983). _______________ While we do not have occasion today to give fuller content to the relatedness requirement,8 it is evident that the requirement serves two functions. First, relatedness is the ____________________ 8At least one scholar reads a line of First Circuit cases as going beyond this point and proposing an innovative constitutional test. See Mark M. Maloney, Specific Personal ___ __________________ Jurisdiction and the "Arise From or Relate to" Requirement . . . _________________________________________________________________ What Does it Mean? 50 Wash. & Lee L. Rev. 1265, nn. 118-130 & ___________________ accompanying text (1993). In our view, these cases which interpret the term "arising from" as that term is used in the long-arm statutes of Massachusetts, see Fournier v. Best Western ___ ________ ____________ Treasure Island Resort, 962 F.2d 126, 127 (1st Cir. 1992); Marino ______________________ ______ v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986), and Puerto ____________ Rico, see Pizarro v. Hoteles Concorde Int'l, Inc., 907 F.2d 1256, ___ _______ ____________________________ 1259-60 (1st Cir. 1990) deal with state-law issues and have no real implications for the relatedness requirement specifically or for constitutional analysis generally. 11 divining rod that separates specific jurisdiction cases from general jurisdiction cases. Second, it ensures that the element of causation remains in the forefront of the due process investigation. Even if the facts are such that a court may not dismiss a given case for lack of relatedness per se, the ___ __ relatedness requirement, in serving its second function, authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed. In this vein, it is important to recognize that, when the defendant in a defamation action is a journalist's source, the link between the defendant's conduct and the cause of action is attenuated by the intervening activities of third parties, e.g., the reporter, the editor, the media outlet, and that those ____ intermediaries shape, amplify, and occasionally distort the original utterance. This case illustrates the point. The original comment, technically a tort in its own right (if defamatory), inflicted no significant injury, except insofar as it led to republication in the ensuing newspaper article and the form and tone of the republication was not by any stretch of the most active imagination within the defendant's effective control. 2. Purposeful Availment. The question here must be 2. Purposeful Availment. ____________________ phrased in terms of whether an individual who merely answers a telephone call, but, having done so, knowingly directs his comments into the forum state, may be said to have purposefully 12 availed himself of the privilege of conducting activities in the state.9 To answer the question, we begin by considering McBreen _______ v. Beech Aircraft Corp., 543 F.2d 26 (7th Cir. 1976), a case that ____________________ the district court thought highly pertinent and that Alioto touts as dispositive. There, the Seventh Circuit refused to sanction the exercise of jurisdiction because the defendant, a journalistic source, did not initiate the defamatory exchange, and, being unaware of either the reporter's whereabouts or the magazine's reach, could not reasonably have foreseen that his comment would cause injury in the forum state. See id. at 28. ___ ___ The two conditions identified as salient in McBreen _______ correspond to the two cornerstones of purposeful availment. One cornerstone is foreseeability. See, e.g., Escude Cruz v. Ortho ___ ____ ___________ _____ Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980); see also ____________________ ___ ____ World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ___________________________ _______ (stating that, for a court to assert jurisdiction, a defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there"). The second cornerstone, less frequently recognized as such, is ____________________ 9Appellant's efforts to reframe this question by hinting that Alioto instigated the call are unavailing. The burden of proving jurisdictional facts rests on the shoulders of the party who seeks to invoke the court's jurisdiction. See McNutt v. ___ ______ General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); __________________________________ Martel, 992 F.2d at 1247 n.5; Pleasant St. I, 960 F.2d at 1090. ______ ______________ On this principle, and in the absence of even a representation or firm allegation to the contrary, we must presume, as did the court below, that Alioto played no part in initiating the telephone call. 13 voluntariness. See Vencedor Mfg. Co. v. Gougler Indus., Inc., ___ _________________ _____________________ 557 F.2d 886, 891 (1st Cir. 1977); see also Burger King Corp. v. ___ ____ _________________ Rudziewicz, 471 U.S. 462, 475 (1985) (cautioning that __________ jurisdiction may not rest on the "unilateral activity of another party or a third person"). In McBreen, these two cornerstones _______ were poorly laid: a failed showing of foreseeability and a questionable showing of voluntariness combined to form an insufficiently sturdy foundation to support in personam __ ________ jurisdiction. The instant case, which amalgamates an arguably successful showing of foreseeability with a dubious showing of voluntariness, is a closer call. We turn, then, to a broader survey of analogous case law. Courts are consentient that when, as in McBreen, the _______ source of an allegedly defamatory remark did not initiate the pivotal contact, and the in-forum injury is not reasonably foreseeable, jurisdiction may not be asserted over the source based on the comment.10 See, e.g., Madara v. Hall, 916 F.2d ___ ____ ______ ____ 1510, 1517-19 (11th Cir. 1990); Mann v. Tom James Co., 802 F. ____ ______________ Supp. 1293, 1296-97 (E.D. Pa. 1992). However, when the source ____________________ 10Appellant characterizes Hugel v. McNell, 886 F.2d 1 (1st _____ ______ Cir. 1989), cert. denied, 494 U.S. 1079 (1990), and Advanced _____ ______ ________ Dictating Supply, Inc. v. Dale, 524 P.2d 1404 (Ore. 1974), as ______________________ ____ cases in which courts asserted jurisdiction even though defamatory exchanges were initiated by persons other than the defendants. We reject the characterization. Our opinion in Hugel, read in context, makes it clear that the defendants played _____ an active role, meeting repeatedly with journalists and supplying them with audiotapes and other information. See Hugel, 886 F.2d ___ _____ at 2-3. The Advanced Dictating court likewise found sufficient __________________ evidence to conclude that the defendants incited the reporter's telephone call. See Advanced Dictating, 524 P.2d at 1406-07. ___ __________________ 14 takes the initiative and causes foreseeable injury, jurisdiction may lie. See, e.g., Brown v. Flowers Indus., Inc., 688 F.2d 328, ___ ____ _____ ____________________ 333-34 (5th Cir. 1982); Rusack v. Harsha, 470 F. Supp. 285, 291 ______ ______ (M.D. Pa. 1978); Fallang v. Hickey, 532 N.E.2d 117, 118-19 (Ohio _______ ______ 1988); see also supra note 10 and cases discussed therein. ___ ____ _____ This case falls between the stools, for, although the source did not initiate the contact, the resultant in-forum injury was foreseeable. In this posture, the authorities are divided. Two courts have declined jurisdiction under such circumstances. See National Ass'n of Real Estate Appraisers v. ___ _________________________________________ Schaeffer, Bates & Co., 1989 U.S. Dist. LEXIS 3098 at *2, *10 _______________________ (C.D. Cal. Mar. 23, 1989) (refusing to assert jurisdiction over a Rhode Island source for comments made in the course of responding to a telephone call from a reporter for a California newspaper); McDonald v. St. Joseph's Hosp., 574 F. Supp. 123, 124, 126-27 ________ ___________________ (N.D. Ga. 1983) (similar; individual defendant answered several telephone calls from a hospital interested in employing plaintiff, and made allegedly defamatory remarks with full knowledge of their potential consequences). At least one other court has asserted jurisdiction in such a situation. See Dion v. ___ ____ Kiev, 566 F. Supp. 1387, 1388-90 (E.D. Pa. 1983) (exercising ____ jurisdiction over a New York defendant who answered a telephone call from a reporter for a Philadelphia newspaper). Other straws in the decisional wind blow in differing directions.11 ____________________ 11In examining the case law, we have considered and rejected appellant's suggested analogy to a line of fraudulent misrepresentation cases. See, e.g., Ealing Corp. v. Harrods ___ ____ _____________ _______ 15 Compare, e.g., Berrett v. Life Ins. Co. of the Southwest, 623 F. _______ ____ _______ ______________________________ Supp. 946, 950 n.3 (D. Utah 1985) (declining to assert jurisdiction, discussing McBreen, and treating the fact that the _______ defendant did not initiate the contact as dispositive) with, ____ e.g., Cole v. Doe, 258 N.W.2d 165, 168 (Mich. 1977) (upholding ____ ____ ___ jurisdiction, without any discussion of initiation, where a source, able to foresee republication in the forum state, made an allegedly defamatory remark in a telephone interview with a nationally syndicated columnist). Having found the case law in a muddle, we consider appellant's invitation that we adopt the classic analogy for an out-of-state libel: the gunman firing across a state line. See ___ Buckley v. New York Post Corp., 373 F.2d 175, 179 (2d Cir. 1967). _______ ___________________ In a situation like this one, the analogy is imperfect. The person who responds to a journalist's question in the course of an interview initiated by the latter is less like a traditional sniper and more like a person who has been transported to the border and eased into position behind a rifle aimed at a pre- selected target. While such a person retains the choice of pulling the trigger, or not, he cannot fairly be equated with an individual who has achieved the same position through a series of ____________________ Ltd., 790 F.2d 978, 982 (1st Cir. 1986); Murphy, 460 F.2d at 663- ____ ______ 64; Johnson v. Witkowski, 573 N.E.2d 513, 523 (Mass. App. 1991); _______ _________ Burtner v. Burnham, 430 N.E.2d 1233, 1236 (Mass. App. 1982). _______ _______ These cases are unhelpful because a business relationship almost invariably entails some degree of initiative and forethought on the part of the persons involved, and, therefore, initiation and foreseeability are necessarily present. 16 personalized affirmative choices reaffirmed at every significant juncture.12 The conclusion that we draw from this line of reasoning is that appellant has made only the most marginal of showings that Alioto purposefully availed himself of an opportunity to act in Massachusetts. And the weakness of this showing assumes decretory significance when we step back and evaluate the fairness of asserting jurisdiction in the totality of the circumstances. 3. The Gestalt Factors. In constitutional terms, the 3. The Gestalt Factors. ___________________ jurisdictional inquiry is not a mechanical exercise. The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis. See, e.g., ___ ____ Woodson, 444 U.S. at 292; International Shoe, 326 U.S. at 320. _______ __________________ "This means that, even where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal." Pleasant St. I, 960 F.2d at 1088; accord _______________ ______ Donatelli, 893 F.2d at 464-65. The Supreme Court has identified _________ five such factors, namely, (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining ____________________ 12Withal, we recognize that a person speaking on the telephone is free to refrain from making defamatory statements in the same way that a person standing beside a telephone is free to refrain from calling a reporter. In terms of moral philosophy, both persons, by acting, commit acts of will. 17 the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. See Burger King, 471 U.S. at 477. We have ___ ___________ labelled this group of considerations the "gestalt factors." See ___ Pleasant St. I, 960 F.2d at 1088; Donatelli, 893 F.2d at 465. ______________ _________ The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance. See Burger King, 471 U.S. at 477-78 ___ ____________ (explaining that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities") (citation omitted). For example, in Asahi _____ Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987), eight _________________ _______________ Justices agreed that asserting jurisdiction would be unreasonable, although the question of minimum contacts was so close that it divided the Court. See id. at 114-15. In the ___ ___ estimation of at least four Justices, considerations of reasonableness sufficed to defeat jurisdiction notwithstanding that the defendant purposefully engaged in activities within the forum. See id. at 116-17 (separate opinion of Brennan, J., ___ ___ joined by White, Marshall, & Blackmun, JJ.). Justice Stevens, although not joining Justice Brennan's concurrence, expressed satisfaction with the theory underlying this conclusion. See id. ___ ___ at 121-22 (separate opinion of Stevens, J.). This aspect of the jurisdictional inquiry remains 18 something of an unknown quantity. The gestalt factors have been applied by the Court only once (in Asahi); beyond mere mention, _____ they have been discussed on rare occasions by the courts of appeals, see, e.g., Gould v. Krakatau Steel, 957 F.2d 573, 576 ___ ____ _____ ______________ (8th Cir.), cert. denied, 113 S. Ct. 304 (1992); Theunissen v. _____ ______ __________ Matthews, 935 F.2d 1454, 1460-61 (6th Cir. 1991), and they have ________ been used regularly to defeat jurisdiction only in the Ninth Circuit, see Mona A. Lee, Burger King's Bifurcated Test for ___ ____________________________________ Personal Jurisdiction, 66 Temp. L. Rev. 945 (1993) (surveying ______________________ circuits). That circuit has concluded that dismissal may be appropriate on grounds of reasonableness even if considerations of relatedness or purposefulness, taken in isolation, could support the exercise of jurisdiction. See Fields v. Sedgwick ___ ______ ________ Associated Risks, Ltd., 796 F.2d 299, 302 (9th Cir. 1986) ________________________ (finding the assertion of jurisdiction unreasonable though the showing of purposefulness was "certainly of a nature that would support jurisdiction"); see also FDIC v. British-American Ins. ___ ____ ____ ______________________ Co., 828 F.2d 1439, 1442 (9th Cir. 1987) (collecting cases in ___ which courts denied jurisdiction for lack of reasonableness without resolving questions anent relatedness and purposefulness); Decker Coal Co. v. Commonwealth Edison Co., 805 _______________ _______________________ F.2d 834, 840 (9th Cir. 1986) (limning Ninth Circuit's multi- factor reasonableness test). We agree in principle with the Ninth Circuit. We hold, therefore, that the Due Process Clause bars a court from asserting jurisdiction over the person of a defendant if doing so 19 would be fundamentally unfair. In this context, gauging fairness requires an assessment of reasonableness for, in certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness. We think, moreover, that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness. See Donatelli, 893 ___ _________ F.2d at 465. It is against this backdrop, then, that we proceed to sift the gestalt factors.13 a. The Burden of Appearance. The burden associated a. The Burden of Appearance. _________________________ with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance, and there are no mitigating factors to cushion that burdensomeness here. This burden, and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales. Indeed, the Court has stated that this element, alone ____________________ 13The approach that we endorse today differs slightly from that of the Ninth Circuit, which has crafted its own version of a sliding scale approach. The Ninth Circuit's methodology, as we understand it, incorporates the element of purposefulness into the third prong of the inquiry, and weighs it against the remaining considerations of reasonableness. See Core-Vent Corp. ___ _______________ v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993); see also ________________ ___ ____ Insurance Co. of North Am. v. Marina Salina Cruz, 649 F.2d 1266, __________________________ ___________________ 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise."). 20 among the gestalt factors, is "always a primary concern." Woodson, 444 U.S. at 292. _______ These are not empty words, for most of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum. See, e.g., Asahi, 480 U.S. at 114 (Japanese defendant ___ ____ _____ sued in California); Core-Vent Corp. v. Novel Indus. AB, 11 F.3d _______________ _______________ 1482, 1488-90 (9th Cir. 1993) (Swedish defendant sued in California; defamation action); Amoco Egypt Oil Co. v. Leonis ____________________ ______ Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993) (Filipino _______________ defendant sued in Washington); Casualty Assur. Risk Ins. _____________________________ Brokerage Co. v. Dillon, 976 F.2d 596, 600 (9th Cir. 1992) ______________ ______ (District of Columbia defendant sued in Guam; defamation action); Fields, 796 F.2d at 302 (British defendant sued in California). ______ The effect of distance on jurisdictional outcomes is graphically illustrated by the two cases in which a defendant's contacts with the forum were most strikingly reminiscent of those that have been assembled here. Compare National Ass'n of Real Estate _______ ________________________________ Appraisers, 1989 U.S. Dist. LEXIS at *11 (declining to assert __________ jurisdiction over Rhode Island defendant who would have had to defend defamation suit in California) with Dion, 566 F. Supp. at ____ ____ 1387 (asserting jurisdiction over New York defendant forced to defend defamation suit in Pennsylvania). Furthermore, as the court below observed, the circumstances surrounding this case suggest that the 21 inconvenience to the defendant may not be coincidental. It is the rare libel case in which both the newspaper and the reporter, though amenable to process, are relegated to the sidelines at the behest of an avowedly defamed plaintiff. It is rarer still to discover that such a plaintiff has intentionally selected a forum in which punitive damages are unavailable, bypassing other fora in which such damages might be awarded. Such considerations are important. One reason that the factor of inconvenience to the defendant weighs heavily in the jurisdictional balance is that it provides a mechanism through which courts may guard against harassment. It is firmly settled that a "plaintiff may not, by choice of an inconvenient forum, `vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ______________ _______ (citations omitted). And although vexatious suits are more frequently dismissed under the doctrine of forum non conveniens, ____________________ we believe that the reasonableness analysis required by the third prong of the due process inquiry must be in service to the same ends. b. Interest of the Forum. The forum state has a b. Interest of the Forum. ______________________ demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders. See Keeton v. Hustler ___ ______ _______ Magazine, Inc., 465 U.S. 770, 776 (1984). Though we deem it ______________ inappropriate to correlate the strength or weakness of appellant's case on the merits with the strength or weakness of 22 the forum state's interest in this regard, we think it is both appropriate and useful to note two special considerations. First, the Commonwealth's interest in the litigation sub judice ___ ______ is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum, see supra p. 7. Second, if appellant in fact filed suit ___ _____ primarily to retaliate against Alioto's role in the California litigation rather than to right an independent wrong and as previously mentioned there are some clues in the record that could lead to such a deduction the Commonwealth's interest would be much diminished. Cf., e.g., Asahi, 480 U.S. at 114-15 ___ ____ _____ (minimizing forum state's interest in protecting its citizens from tortious injury because a dispute was "primarily about indemnification rather than safety standards"). Mindful of these special considerations, we conclude that the forum has a milder than usual interest in the further prosecution of T-NY's suit. c. The Plaintiff's Convenience. Given the sparseness c. The Plaintiff's Convenience. ____________________________ of the record, it is difficult to say whether trying the case in Massachusetts would be more convenient for plaintiff than trying it in California. Certain key witnesses on the issue of injury may be in Massachusetts, including the reporter. But other key witnesses may well be residents of California. While we must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience, see Piper Aircraft ___ ______________ Co. v. Reyno, 454 U.S. 235, 241 (1981), the plaintiff's actual ___ _____ ______ convenience seems to be at best a makeweight in this situation. 23 d. The Administration of Justice. Apart from the d. The Administration of Justice. _______________________________ possibility that plaintiff's action might be thought vexatious, see supra Part II(B)(3)(a), the interest of the judicial system ___ _____ in the effective administration of justice does not appear to cut in either direction. e. Pertinent Policy Arguments. One substantive social e. Pertinent Policy Arguments. __________________________ policy that seems to counsel against exercising jurisdiction is the widely shared interest in preserving citizens' willingness to talk openly with the press. Forcing an individual to fly cross-country on the strength of one answered telephone call from a journalist likely would tend to dry up sources of information and thereby impede the press in the due performance of its proper function. Nonetheless, the Court has shied away from allowing First Amendments concerns to enter into the jurisdictional analysis. See Keeton, 465 U.S. at 780 n.12; Calder v. Jones, 465 ___ ______ ______ _____ U.S. 783, 790 (1984). Although it might be argued convincingly that the jurisdictional calculus ought to produce somewhat different results in defamation actions filed against reporters' sources than in actions filed against the journalists responsible for republication of a source's remark, as in Calder, or against ______ the media corporation itself, as in Keeton, these precedents give ______ us pause. Consequently, we place no weight on First Amendment values for purposes of this appeal. 4. Tallying the Results. We begin the final phase of 4. Tallying the Results. _____________________ our analysis by retracing our steps. At the first stage of the due process inquiry, appellant succeeded in showing that its 24 putative cause of action arose from, or related to, defendant's contacts with the forum. See supra Part II(B)(1). At the second ___ _____ stage of the inquiry, appellant succeeded in showing defendant's purposeful availment. See supra Part II(B)(2). On neither ___ _____ prong, however, did appellant demonstrate more than a bare minimum; we found its claim of relatedness enfeebled by the attenuated causal link between the allegedly defamatory utterance and the harm allegedly suffered, and its claim of purposefulness enfeebled by the fact that the defendant did not initiate either the telephone call or the resultant interview. The frailty of appellant's showings on the first two furcula of the due process inquiry required us to consider the gestalt factors and assess the reasonableness of an assertion of jurisdiction by a Massachusetts court. Doing so, see supra Part ___ _____ II(C), we found that, while many of those factors possess little significance for purposes of this case, there is one factor the defendant's convenience that stands out from the crowd. It is this factor that consistently has been declared deserving of the greatest weight in kindred cases. And it is this factor that may serve as an amulet to ward off vexatiousness and harassment. We now conclude, considering the totality of the circumstances, that defendant's burden of appearance is so onerous that it renders the exercise of in personam jurisdiction unreasonable. This __ ________ conclusion carries the day. A distant court cannot constitutionally exercise in personam jurisdiction over a non- __ ________ resident defendant at the behest of a plaintiff who can muster 25 only the most tenuous showings of relatedness and purposefulness if, as in this case, forcing the defendant to defend in the forum would be plainly unreasonable. This is as it should be, for, at bottom, the dictates of due process demand that a court's assertion of in personam __ ________ jurisdiction comport with considerations of fair play and substantial justice. See, e.g., International Shoe, 326 U.S. at ___ ____ ___________________ 320. To ensure achievement of this goal, the machinery of jurisdictional analysis is designed to refine judges' intuitions about the relevant equities, not to eliminate those equities from the decisional process. Relatedness and purposeful availment are cogs in this analytic machinery. The gestalt factors comprise the machinery's fail-safe device; they are not a necessary part of the machinery's day-to-day operation, but if, in the course of a particularized analysis, the gears mesh imperfectly because a given set of facts does not fit into any of the standard molds, the gestalt factors take hold. This case exemplifies the proper operation of the fail- safe device. It hardly seems fair, on the strength of a single remark uttered in the course of a single unsolicited telephone call from a Massachusetts-based journalist, to compel a California resident to defend a tort suit in a court 3000 miles away. The unfairness is heightened because the link between the remark and the injury has been attenuated by republication in the popular press. Our commitment to fair play and substantial justice precludes us from subjecting a person to the rigors of 26 long-distance litigation on the basis of so gossamer a showing of causation and voluntariness. We need go no further. When all is said and done, courts must assert jurisdiction, or abjure its assertion, with an eye toward fundamental fairness. Thus, here, the district court's dismissal of the instant action for want of in personam __ ________ jurisdiction must be Affirmed. Affirmed. ________ 27